J. A33011/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN GIOVINAZZO AND | : | IN THE SUPERIOR COURT OF |
| TAMMY GIOVINAZZO | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SUSQUEHANNA BANK, KEVIN RIFE, | : | |
| RIFE & ASSOCIATES AND | : | |
| RIFE & ASSOCIATES MANAGEMENT | : | |
| CONSULTING LLC | : | |
| | : | |
| APPEAL OF:  SUSQUEHANNA BANK, | : | No. 3147 EDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered September 28, 2014,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. 00133 Feb. Term 2013

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **Filed: July 1, 2016**

Susquehanna Bank ("the Bank") appeals the order of the Court of
Common Pleas of Philadelphia County that denied the Bank's claim of
privilege and ordered the Bank to produce without redaction all documents
listed on Exhibits D and E of Plaintiff's Motion to Compel the Deposition of
Defendant Kevin Rife, the Corporate Designee of Rife Associates and the
Corporate Designee of Susquehanna Bank and Motion to Compel Production
of Documents Directed to Susquehanna Bank ("Motion") filed by
John Giovinazzo ("Giovinazzo") and Tammy Giovinazzo (collectively, "the
Giovinazzos") within 15 days.

_____

* Retired Senior Judge assigned to the Superior Court.

On or about May 16, 2006, the Bank entered into a loan transaction with Davis-Giovinazzo Construction Company ("D-G Construction") and the related companies of General Masonry Construction Company, Inc., Davis-Giovinazzo Masonry Company, Inc., and Tri-State Masonry Systems, Inc. (collectively, "the DG Obligors"). The Bank agreed to lend the DG Obligors the principal amount of $2,250,000. The DG Obligors executed and delivered a promissory note to the Bank dated May 16, 2006. Also, on May 16, 2006, the Bank entered into another loan transaction with the DC Obligors and extended a line of credit to them in the maximum principal amount of $6,000,000. The DG Obligors executed and delivered a promissory note to the Bank for this loan on May 16, 2006. The two loans were secured in part by a security agreement and UCC-1 financing statements that covered the accounts receivable of D-G Construction. Giovinazzo and other parties executed and delivered to the Bank a Guaranty and Suretyship Agreement, dated May 16, 2006, under which the payments of all sums due and owing from D-G Construction to the Bank were guaranteed. The line of credit amount was increased to $6,450,000.

In July 2007, D-G Construction overdrew the line of credit. At the request of the DG Obligors, the principal amount available under the line of credit was increased to $9,500,000. D-G Construction defaulted on its obligations to the Bank, so the Bank again increased the principal amount available under the line of credit. D-G Construction defaulted on its

obligations to the Bank when it failed to make required payments. Giovinazzo defaulted on his obligations under the Guaranty and Suretyship Agreement when he failed to cure D-G Construction's default. On July 13, 2011, the Bank entered a confessed judgment against Giovinazzo in the amount of $14,847,186.68 plus interest after May 19, 2011, in the amount of $1,725.98 per day. The judgment has not been satisfied.

In the fall of 2007, the Bank assumed control of D-G Construction and took over management of its operations. The Bank hired Kevin Rife ("Rife"), Rife & Associates, and Rife & Associates Management Consulting, LLC (collectively, "Rife Defendants") to act as its consultants and help the Bank recover uncollected debt of D-G Construction and to operate D-G Construction. The Bank employed Giovinazzo to complete projects for D-G Construction and to assist in the collection of outstanding accounts receivable. As part of the consideration for this service, the Bank allegedly was supposed to relieve Giovinazzo of all obligations to the Bank.

In February 2012, the Pennsylvania Attorney General's Office filed criminal charges against Giovinazzo personally because D-G Construction failed to pay Pennsylvania taxes during the time the Bank and Rife were in control of it. Giovinazzo was charged with four counts of theft by failure to make required disposition of funds. The Attorney General's Office dismissed the charges against Giovinazzo on the basis that he was not responsible for the payment of taxes by D-G Construction. During the investigation, Rife

allegedly made false statements to the Pennsylvania Department of Revenue and/or the Attorney General's Office regarding the Bank's operation of D-G Construction and Giovinazzo's role in it regarding the responsibility to pay taxes.

The Giovinazzos commenced an action in the trial court against the Bank and the Rife Defendants. Following preliminary objections by the Bank and Rife, the Giovinazzos' amended complaint contained a claim for malicious prosecution as they alleged that Rife made false statements to Pennsylvania Department of Revenue agents in order to place blame for D-G Construction's failure to pay taxes on Giovinazzo when, according to Giovinazzo, it was the Bank's responsibility to pay the taxes. Giovinazzo further alleged that the Bank diverted money to itself that should have been used to pay the outstanding tax liability. Mrs. Giovinazzo also alleged a loss of consortium.

On March 26, 2014, the Giovinazzos filed a motion to compel the Bank to answer interrogatories and to respond to the Giovinazzos' request for production of documents. Following a discovery hearing on April 7, 2014, the trial court, on April 14, 2014, granted the motion and ordered the Bank to provide full and complete responses to the interrogatories and full and complete production of documents for inspection. Thereafter, the Giovinazzos' counsel inspected numerous records at the Bank's counsel's office.

On June 27, 2014, the Bank provided to the Giovinazzos a redaction log and a privilege log. The redaction log contained 165 redacted emails related to the documents that were responsive to the April 14, 2014 order. The redaction log was included as Exhibit D of the Motion. The subjects of the emails included correspondence concerning litigation, correspondence concerning deposition, correspondence concerning legal strategy, correspondence concerning pleading, correspondence concerning arbitration, correspondence concerning status of operations, correspondence concerning loan, correspondence concerning bank policies, correspondence concerning collections, correspondence concerning financial matters, correspondence concerning union matters, and correspondence concerning project management. The log also listed the sender and the recipients of the emails. Rife was the sender of 57 of the emails and the recipient of 47. The emails were designated as privileged as either "attorney-client" or "work product" or both.

The privilege log identified 364 pages of withheld documents that contained 558 emails, letters, memoranda, spreadsheets, and other communications that were responsive to the April 14, 2014, order. The privilege log was included as Exhibit E of the Motion. Rife was the author of 116 of the documents and the recipient of approximately 101. The documents were designated as privileged as either "attorney-client" or "work product" or both.

On July 17, 2014, the Giovinazzos filed the Motion after they received the logs. The Giovinazzos alleged:

> 3. The log lists non-privileged documents. The logs claim 'work product and attorney-client privilege' with respect to documents by and amongst Defendant Kevin Rife and Frank Correll, Esquire, and/or Anthony Tabasso, Esquire both of Klehr Harrison (who represents [the] Bank in this litigation). However, no such documents are privileged as Klehr Harrison never represented Kevin Rife nor Rife & Associates and indeed has never claimed to do so in this litigation.

> 4. Further, the logs in other entries list persons as being recipients of alleged privileged documents who also are or may not be persons to whom a privilege would apply, i.e. Albert Ciardi, Esquire, who upon information and belief, never represented any of the defendants in this matter and Annie Foody (a person whose identity is unknown to [Giovinazzos'] counsel).

> 5. Based on the foregoing, [Giovinazzos] assert that the late production of privilege logs and the nature of those logs exhibit bad faith on the part of [the] Bank.

Motion at 3-4 ¶¶3-5.

The Giovinazzos requested that the trial court order the Bank to produce without redaction all documents listed in Exhibits D and E of the Motion. Alternatively, the Giovinazzos requested that the trial court conduct an ***in camera*** examination of the documents to determine if the Bank asserted a valid privilege. At oral argument, the Giovinazzos' counsel, Neil Jokelson, Esq., stated, "I'm requesting all the documents that either

were sent to or sent from Kevin Rife to Susquehanna Bank or Susquehanna Bank's counsel." (Notes of testimony, 7/28/14 at 5.)

The trial court granted the motion and ordered the Bank to produce without redaction all of the documents listed in Exhibits D and E or, alternatively, the Bank had the option to submit the documents to the Court for an *in camera* review to determine whether the asserted privilege for each item was valid.

On August 12, 2014, the Bank delivered the documents to the trial court. The Bank categorized the documents as: (i) communications between the Bank or its counsel and the Rife Defendants which were previously produced to the Giovinazzos as redacted subject to the attorney-client and/or work-product privileges, as (ii) communications between the Bank and its counsel and the Rife Defendants that were previously withheld from production to the Giovinazzos because the documents were subject to attorney-client and/or work-product privileges, and as (iii) documents prepared by the Rife defendants for the use of the Bank and its counsel that were previously withheld from the Giovinazzos because they were subject to the work-product privilege.

On September 28, 2014, the trial court denied the claim of privilege and ordered the Bank to produce all of the documents listed in Exhibits D and E of the motion for production of documents. The trial court reasoned:

> Kevin Rife, who either sent or received the emails in
> question, was neither [the Bank's] attorney nor the

attorney's subordinate. He was a third-party. A party waives privilege when documents are shared with non privileged persons. [The Bank] waived any claim of attorney-client privilege when emails that it sent to its Counsel were sent to Mr. Rife. These emails were directly related to the management of [D-G Construction]. After *in camera* review, the Court concluded the emails are not attorney work product because they do not contain the mental impressions, conclusions, or opinions of the value or merit of a claim, defense, strategy, or litigation tactic. Accordingly, the Court properly ordered the category (i) and (ii) documents to be produced to [the Giovinazzos] without redactions.

[The Bank] produced redacted documents to the Court for *in camera* review asserting attorney-client privilege. These redacted documents are alleged to fit within category (ii).

No claimant of a testimonial privilege can be the final arbiter of his or her own claim. The trial court must make specific findings and rulings as to each claim of privilege. A benefit of *in camera* review is that it "provides an essential check against the possibility that a privilege may be abused." When the Court cannot determine what the document is or says, it cannot sustain a claim of privilege.

The purpose of *in camera* review is to determine whether such documents are what the objecting party claims and that the claimed privilege exists. [The Bank] failed to meet its burden with respect to claiming privilege on multiple documents because they were blacked out entirely and could not be reviewed. If the Court cannot perform the "essential check" for abuse of privilege during *in camera* review because documents have been redacted completely, then [the Bank] cannot prevail in the assertion of privilege of which it has the burden to demonstrate. Accordingly, the Court properly ordered the redacted documents to be produced to [the Giovinazzos] without redactions.

The category "iii" documents that were withheld from [the Giovinazzos] are materials relating to [D-G Construction's] finances prepared by the Rife Defendants for [the Bank]. [The Bank] claims privilege for these documents on the basis of attorney work product only, not attorney-client communications. Kevin Rife is not an attorney. The Rife Defendants deny that Kevin Rife was ever an agent of [the Bank]. There is no basis for a claim of attorney work product privilege when the creator of the document is not an attorney, not a subordinate of an attorney, and the substance of the documents contain no mental impressions, conclusions, or opinions of the value or merit of a claim, defense, strategy, or tactic.

Trial court opinion, 3/25/15 at 5-6 (footnotes omitted).

The Bank has raised the following issues before this court:

A. Did the trial court abuse its discretion when it compelled [the] Bank to produce to [the] Giovinazzo[s] all documents that had been withheld from production as privileged, without regard for whether the production of those documents had actually been requested?

B. Did the trial court err as a matter of law when it overruled valid claims of privilege and required [the] Bank to disclose attorney-client privileged and attorney-work product protected information?

The Bank's brief at 4.

This court's review of a discovery order is limited to a determination of whether the trial court committed an abuse of discretion. *Gormley v. Edgar*, 995 A.2d 1197 (Pa.Super. 2010). This court's standard of review of questions of law is *de novo*, and its scope of review is plenary. Whether the attorney-client privilege or the work product doctrine precludes a document

or communication from disclosure is a question of law.  *St. Luke's Hospital of Bethlehem v. Vivian*, 99 A.3d 534 (Pa.Super. 2014).

In *Custom Designs and Manufacturing Company v. Sherwin-Williams Company*, 39 A.3d 372, 376 (Pa.Super. 2012), this court described the application of attorney-client privilege:

> In Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice.  *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa.2011); *See* 42 Pa.C.S. §5928.  In describing the purpose of the privilege, we have said:  "The attorney-client privilege exists to foster a confidence between attorney and client that will lead to a trusting and open dialogue."  *Gocial v. Independence Blue Cross*, 827 A.2d 1216, 1222 (Pa.Super. 2003).
>
> Pennsylvania law imposes a shifting burden of proof in disputes over disclosure of communications allegedly protected by attorney-client privilege.  The party invoking a privilege must initially "set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, e.g., because the privilege has been waived or because some exception applies."  *Nationwide Mut. Ins. Co. v. Fleming*, 924 1259, 1266 (Pa.Super. 2007) (citations omitted), *aff'd*, 605 Pa. 468, 992 A.2d 65 (2010).  Accordingly, "[i]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege." *Id.* at 1267.

> Four elements must be satisfied in order to invoke successfully the protections of attorney-client privilege:
>
> 1)   The asserted holder of the privilege is or sought to become a client.
>
> 2)   The person to whom the communication was made is a member of the bar of a court, or his subordinate.
>
> 3)   The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.
>
> 4)   The privilege has been claimed and is not waived by the client.

*Id.* at 1264 (citations omitted).

The Bank asserts that the trial court abused its discretion when it ordered the Bank to produce copies of all the documents listed on Exhibits D and E, when the Giovinazzos did not expressly demand all the documents in Exhibits D and E of the Motion or in oral argument before the trial court and that some of these documents did not pertain to communications between the Bank and the Rife Defendants or between the Bank's attorneys and the Rife Defendants.

First, a review of the record before this court reveals that the Giovinazzos did request that the Bank produce all of the documents listed in

Exhibits D and E in the Motion, although they did not make that same request in oral argument.

Second, in its order that granted the motion, the trial court did not distinguish between the documents that were communications between the Bank and the Rife Defendants and any other documents listed on the exhibits for which the Bank claimed privilege. The order stated in pertinent part:

> It is further ORDERED and DECREED that Susquehanna Bank, within fifteen (15) days of the date of this Order, is to produce, without redaction, all documents listed in Exhibits D and E or alternatively, Susquehanna Bank shall within that time frame submit to this Court for examination in camera of all documents listed on Exhibits D and E to allow this Court to determine if a valid privilege has been asserted. Failure to comply with this Order may result in the imposition of sanctions upon further application of the Court.

Trial court order, 7/28/14 at 1-2.

The Bank was ordered to either produce all of the documents listed on Exhibits D and E or produce all of the documents for an *in camera* review by the trial court. If the Bank believed that the scope of the discovery order was too broad, it could have asked the trial court to reconsider the scope of the order or to clarify the scope of the order. The Bank did not do so. Instead, the Bank submitted the documents to the trial court for its review with part or all of many of the documents redacted. Because the Bank provided some of the documents in redacted form, the trial court denied the

claim of privilege on the basis that it could not determine what the documents said, such that the Bank failed to meet its burden to prove that it was entitled to its claims of privilege. The trial court ordered the Bank to provide unredacted copies of the documents at the oral argument. (Notes of testimony, 7/28/14 at 9.) As the trial court stated in its opinion, the redactions defeated the purpose of an *in camera* review. Somewhat confusingly, the trial court does not identify a class of documents which did not include communications between the Bank and/or its attorneys and the Rife Defendants and in its opinion, referred only to the request for documents between the Bank and/or its attorneys and the Rife Defendants. The documents are not before this court. However, given the facts of this case, this court determines that the trial court did not abuse its discretion when it ordered the Bank to produce all of the documents listed in Exhibits D and E.

The Bank next contends that the trial court erred as a matter of law when it overruled the privileges claimed by the Bank for communications between the Bank, the Bank's attorneys, and the Rife Defendants, and between the Bank's attorneys and the Rife Defendants. Once again, it is the Bank's burden to prove that it is entitled to the privilege. In oral argument before the trial court, Rife's counsel denied that the Rife Defendants had an agency relationship with the Bank or the Bank's attorneys. (Notes of testimony, 7/28/14 at 7.) Further, the Bank denied an agency relationship

with the Rife Defendants in its answer to the amended complaint. (*See* answer and new matter to plaintiffs' amended complaint, 1/23/14 at 2 ¶7.) The trial court determined that Rife was neither an attorney of the Bank nor a subordinate of the Bank's attorney as required in *Nationwide*. Based on the record before this court, this court finds that the trial court did not abuse its discretion when it found that the documents involving Rife and the Rife Defendants were not privileged.

The Bank also contends that the trial court erred when it concluded that the communications by and between the Bank, the Rife Defendants, and the Bank's attorneys should be produced in total because certain portions of those documents not subject to the review of the trial court were redacted when submitted on an *in camera* basis. Once again, the trial court ordered the Bank to produce all of the documents in Exhibits D and E in an unredacted form in order for the trial court to conduct its *in camera* review. When it failed to do so, it could not prove that it was entitled to the claimed privilege. Further, once these communications were shared with an outside third party, Rife, they were no longer subject to the attorney-client privilege. *See Bagwell v. Pennsylvania Department of Education*, 103 A.3d 409 (Pa.Cmwlth. 2014).

The Bank also contends that the trial court erred when it declared that the emails submitted for *in camera* review did not qualify under the work-product doctrine because they did not contain the mental impressions,

conclusions, or opinions of the value or merit of a claim, defense, strategy, or litigation tactic. The Bank argues that each of the communications exchanged between the Bank, the Bank's attorneys, and the Rife Defendants that were listed in Exhibits D and E as "work product" are shielded from production in discovery because these entities frequently analyzed claims and defenses and shared strategy and tactics as a result of the "turnaround" work being conducted.

The work-product doctrine is codified in Rule 4003.3 of the Pennsylvania Rules of Civil Procedure. This rule states in pertinent part:

> Subject to the provisions of Rules 4003.4 and 4003.5[1], a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his attorney . . . insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his mental impressions, conclusions, or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3.

The purpose of protecting work product from discovery is to shield "the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." ***Lepley v. Lycoming County***

---

[1] Rules 4003.4 and 4003.5 are inapplicable here.

*Court of Common Pleas*, 393 A.2d 306, 310 (Pa. 1978), quoting *United States v. Nobles*, 422 U.S. 225, 238, (1975).

The Bank presented no evidence to support its claim that these documents were exempt from discovery as work product. The trial court concluded that these emails related to the management of D-G Construction and Giovinazzo's employment with D-G Construction. The Bank's argument does not persuade this court that the trial court abused its discretion.

The Bank further contends that the trial court erred as a matter of law when it categorically overruled privileges claimed for documents prepared by the Rife Defendants for the Bank's attorneys under the work-product doctrine. While the attorney work-product privilege extends to the mental impressions, conclusions, or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics including those of a party's representative who is not an attorney, Rife was neither an attorney nor was he, according to the Bank, its agent. We find no abuse of discretion.[2]

Order affirmed.

---

[2] Finally, the Bank contends that the trial court erred as a matter of law when it implicitly overruled all other privileges claimed in Exhibits D and E. The Bank asserts that these documents were never requested by the Giovinazzos but that they were required to produce all clearly privileged communications between the Bank and its attorneys with respect to the request and provision of legal advice and between the Bank's attorneys

J. A33011/15

Judgment Entered.

![signature]

JosephD.Seletyn,Esq.
Prothonotary

Date: 7/1/2016

---

concerning mental impressions and litigation strategies. This court has already addressed this issue.